## Cooper v. Walker, et al.

(Decided February 8, 1911.)

## Appeal from Johnson Circuit Court.

1. Guardian and Ward—Action by Ward.—In an action by a ward against her guardian and his sureties to recover money which it is alleged the guardian received and failed to account for evidence examined and held that it failed to show that any property of the ward's came into his hands.

2. Deed—Collateral Attack.—In such an action a deed from the ward's father to her mother can not be collaterally attacked for the purpose of showing that the property conveyed by the deed in fact descended to the ward subject to the mother's dower rights.

3. Wife's General Personal Estate—Reduction to Possession by Husband.—Under the law in force at the time of the transaction in controversy the general personal estate of the wife became the property of the husband when reduced to possession by him.

4. Contract for Ward's Benefit.—Where the guardian with his own money contracts with a third party to take the ward into his family and care for and educate her as one of his own children, and the third party faithfully performs the contract no right of action lies in favor of the ward against the contracting party.

J. MORGAN CHINN and C. B. WHEELER for appellant.

VAUGHAN, HOWES and HOWES for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellant Permelia Cooper brought this action against appellee B. K. Walker, her statutory guardian, H. S. Howes and C. M. Cooper, sureties on his guardian's bond, and also against Martha J. Davis, the administratrix of W. W. Stafford, deceased, for moneys which she alleged her guardian had received and had not accounted for. She also charged that Walker turned over to W. W. Stafford $400 of her money without lawful right or authority to do so. Walker, Howes and Cooper filed a joint answer, traversing the allegations of the petition. Martha J. Davis, as administratrix, filed a separate answer, in which she, after traversing the allegations of the petition, set up affirmatively that B. K. Walker, as an individual, had entered into a contract with W. W. Stafford, by which Stafford agreed, in consideration of the sum of $400, to take appellant into his

family, give her a common school education, and clothe and treat her in all respects as he did his own children, until appellant married or died; that it was agreed that should appellant marry, the $400 should become the absolute property of W. W. Stafford; that appellant resided with said W. W. Stafford and his family for a period of seven and a half years, during which time she was treated in all respects as one of Stafford's own children, up to the date of her marriage in April, 1094. Subsequently, Martha J. Davis, as administratrix, filed an amended answer and counterclaim, in which she charged that it was agreed between Walker and Stafford that Walker was to keep an account of the $400 expended; that of said amount all was expended for appellant's maintenance and support except the sum of $159.54. She also pleaded that it was worth $100 per year to keep and board appellant during the time she lived with Stafford, and that she, as administratrix, was entitled to recover the sum of $700, less the sum of $159.54. The affirmative matter in the original answer of Martha J. Davis was denied by reply, while the allegations of the amended answer and counterclaim were controverted of record. The chancellor denied appellant the relief prayed for, and also dismissed the counterclaim of Martha J. Davis, administratrix. From that judgment this appeal is prosecuted.

The facts disclosed in the record are as follows: The appellant was the only child of Thomas Preston, who died in the year 1888. The day before he died Preston conveyed a house and lot that he owned to his wife, the mother of appellant. In August, 1889, appellant's mother married appellee B. K. Walker. Two or three years later she and Walker sold the house and lot for $600. In addition to this sum, appellant's mother received from her father's estate the sum of $300. Out of this sum an execution against her father for $127.04 was paid, making the amount realized from her father's estate $172.96. Taking this sum of $772, Walker and his wife moved to Morehead. There Walker engaged in the livery business with his brother-in-law, Ben Spradlin, and continued the business for four or five years. While there, Walker bought a lot for $100 and took the deed thereto in his own name. Subsequently he built a house thereon. The other property which Walker received from his wife was consumed by him and his wife. While at Morehead Mrs. Walker contracted consump-

tion. They then returned to Paintsville, where she lingered for about a year, and then died. During that time Walker devoted himself chiefly to nursing and taking care of his wife. Upon the death of his wife, Walker kept appellant, who was about eight years old, for a period of one year. Finding that he could not provide for her and give her the attention she required, he arranged with W. W. Stafford to take her into his family as one of his children. To that end he sold the house and lot in Morehead for $450. The note for the deferred payment amounted to $400. These notes he turned over to W. W. Stafford. The contract, which he entered into with Stafford for the care and maintenance of appellant, is as follows:

"This article of agreement, made and entered into this 23d day of December, 1896, between W. W. Stafford of the first part and B. K. Walker of the second part:

"Witnesseth: That the party of the first part for and in consideration of notes this day assigned to said party of the first part by party of the second part on F. P. Blair, amounting to the sum of four hundred dollars, the party of the first part agrees to take Permelia (Beady) Preston as one of his own family and to treat her as one of his own family and to treat her as such, to give her a common school education, clothe and treat her in all respects as he does his own children until she marries or dies, and he further agrees to keep an account with her and in case of her death before her marriage he agrees to pay to the said B. K. Walker all that is left or unspent of the four hundred dollars.

"Witness our hands and seals the day and year first above written.

"W. W. STAFFORD,
"B. K. WALKER."

Upon the execution of the foregoing contract, appellant went to the home of W. W. Stafford, where she remained until her marriage, in 1904. While there she was clothed and boarded by Mr. and Mrs. Stafford. She was sent to the public schools while they were in session, and, with the exception of one term, attended the subscription school which was conducted after the closing of the public school. In addition to this, she was also given instruction in music. During, perhaps, two years of the time appellant was at the Stafford home, Mrs. Stafford had a servant who cooked and did the housework; when there was no servant Mrs. Stafford did the cooking, while

appellant and Mrs. Stafford's two daughters assisted with the housework at such times as they were not engaged at school. It is also shown that appellant did the milking at times. It does not appear, however, that she was called upon to do more than the Stafford children were required to do.

There was some evidence tending to show that Thomas Preston, at the time he deeded the $600 house and lot to his wife, was mentally incapable of making a deed. It is, therefore, insisted that the deed was void, and that the proceeds of the sale, upon the death of Thomas Preston's widow, descended to appellant; and that that being true, the money was appellant's, and Walker, as her guardian, had no right to make with Stafford the contract for her support and maintenance. Even if the deed in question was voidable it could not be collaterally attacked in this action. The only way to set it aside would be by direct action brought for that purpose. In this action, therefore, the deed must be construed as valid. That being true, the proceeds of the sale of the house and lot became the property of appellant's mother, subject to Walker's marital rights therein. It appears that Walker took possession not only of the sum received from the sale of the house and lot, but of the money which Mrs. Walker received from her father, and used the money for the purpose of engaging in and transacting the business of a liveryman, and for the purpose of buying the lot in Morehead. Having reduced the personal property to possession, it became his under the law then in force. (McKay v. Mays, 16 Ky. Law Rep., 862; Daniel v. Brandenburg, 14 Ky. Law Rep., 310.)

That being true, the $450 which appellee Walker realized from the sale of the house and lot in Morehead was his property and not that of appellant. Notwithstanding this fact, he acted most generously towards appellant, for he took $400 of the sum realized and gave it to W. W. Stafford under the agreement that Stafford was to take care of and maintain appellant as one of his own children.

As appellee Walker had the right to make the contract in question for appellant's benefit, and, as the evidence shows that the contract was faithfully carried out by Mr. and Mrs. Stafford, and that Walker as guardian never received any property belonging to appellant, it follows that appellant has failed to show any right of recovery against appellees.

Judgment affirmed.